UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MICHAEL LANE**, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. _____ |
| **AMERICAN EXPRESS COMPANY**, | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Michael Lane, by counsel, and for his Complaint against Defendant American Express Company ("AMEX"), he states as follows:

**PRELIMINARY STATEMENT**

1. This is an action for statutory, actual, and punitive damages, costs, and attorney fees brought to enforce Plaintiff's civil rights pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

2. The Fair Credit Reporting Act provides federally codified protection of Plaintiff's civil rights with regard to Plaintiff's privacy, Plaintiff's reputation, and Plaintiff's due process rights against defamation. The Fair Credit Reporting Act is part of a larger category of consumer protection statutes designed to arm consumers against discrimination, intrusions upon privacy, and other types of unfair and inequitable treatment. Similar statutes falling under this same umbrella of protection include, for example, the Equal Credit Opportunity Act, the Fair Housing Act, and the Fair Debt Collection Practices Act.

3. Claims under these federal protections are brought "in connection with any action involving a claim of 'unlawful discrimination'", as described in 26 U.S.C § 62(a)(20). For the

purposes of 26 U.S.C § 62(a)(20), the term "unlawful discrimination" is broadly defined in 26 U.S.C § 62(e) to mean "an act that is unlawful under . . .[a]ny provision of Federal, State, or local law, or common law claims permitted under Federal, State, or local law . . . providing for the enforcement of civil rights".

4. Plaintiff is the victim of what is now a common crime—identity theft. A fraudster used Plaintiff's personal information to open a credit card with AMEX.

5. Plaintiff has asserted the factual truth—that the AMEX account does not belong to him and he did not authorize it. Yet despite this truth, AMEX continues to wrongfully attach Plaintiff, and Plaintiff's good name, to an account that was fraudulently opened by a criminal.

6. AMEX also reported (and is continuing to report) the inaccurate account to the Big Three consumer reporting agencies ("CRAs"). Plaintiff's disputes of the inaccurate information to the CRAs proved futile. When responding to the CRAs regarding Plaintiff's disputes, AMEX "verified" its false credit reporting—even after AMEX received an identity theft report that Plaintiff filed with the Federal Trade Commission.

7. The FCRA demands that CRAs utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

8. Also, when a consumer like Plaintiff disputes the accuracy of information with the CRAs, the CRAs must transmit that dispute to the entity who furnished the information. Here, that entity is AMEX. After receiving each of Plaintiff's disputes from the CRAs, AMEX became obligated to conduct its own, independent investigation of that dispute. *Id.* § 1681s-2(b).

9. Plaintiff brings claims under Section 1681s-2(b) against AMEX because it received Plaintiff's disputes from the CRAs and thereafter failed to reasonably investigate those disputes. Instead, discovery will show all that AMEX did was consult its own records about the account and confirm to the CRAs the inaccurate information that it was already reporting.

10. Additionally, Plaintiff brings claims under Section 1681b against AMEX because AMEX accessed Plaintiff's private information dozens of times without having a permissible purpose to do so, even after learning that the AMEX account was opened by an identity thief.

## JURISDICTION AND VENUE

11. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

12. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of this District and Division.

## PARTIES

13. Plaintiff is a natural person residing in the State of Wyoming, and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. § 1681a(c).

14. Defendant American Express Company ("AMEX") is a domestic business corporation authorized to do business in the State of New York through its principal executive office and registered agent, both in New York, New York.

15. AMEX is a "furnisher" of information as governed by 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

*Plaintiff Discovers the Fraudulent AMEX Account on his Credit Reports
and Disputes those Inaccuracies*

16. Plaintiff is a victim of identity theft.

3

17. An identity thief used Plaintiff's personal information, without Plaintiff's permission, to place fraudulent charges on Plaintiff's existing accounts and open fraudulent accounts in Plaintiff's name.

18. In October of 2021, Plaintiff was wrongfully accused of bank fraud and apprehended by law enforcement. The charges against him were dropped when the parties involved discovered that he is a victim of identity theft.

19. In or around April of 2022, the Public Defender who represented Plaintiff wrote letters informing each of the CRAs that Plaintiff was a victim of identity theft.

20. In or around April of 2022, Plaintiff also sent a copy of each letter from the Public Defender to the CRAs.

21. Later that year, Plaintiff obtained copies of his credit files with the CRAs and discovered that a severely delinquent (and charged off) account with AMEX —opened as a result of fraud—was reporting on all three.

22. Plaintiff did not open any account with AMEX.

23. Plaintiff did not authorize anyone to open an account with AMEX on his behalf.

24. Plaintiff did not use the AMEX account.

25. Plaintiff did not benefit in any way from use of the AMEX account.

26. In or around February 2023, Plaintiff mailed written dispute letters to the three CRAs via USPS first class certified mail, return receipt requested.

27. In his February 2023 dispute letters to each of the CRAs, Plaintiff informed the CRAs that the AMEX account was opened as a result of identity theft.

28. Plaintiff did not receive a timely response (or any response) from Equifax following his February 2023 dispute. However, upon information and belief, Equifax deleted the AMEX account from Plaintiff's credit file sometime subsequent to Plaintiff's February 2023 dispute.

29. Following Plaintiff's February 2023 dispute to Experian, AMEX continued to report the fraudulent account on Plaintiff's credit file with Experian.

30. Plaintiff did not receive a timely response (or any response) from Trans Union following his February 2023 dispute.

31. Following Plaintiff's February 2023 dispute to Trans Union, AMEX continued to report the fraudulent account on Plaintiff's credit file with Trans Union.

32. In December of 2023, Plaintiff mailed a second set of dispute letters to Experian and Trans Union, via USPS first class certified mail, return receipt requested.

33. In his December 2023 letters to Experian and Trans Union, Plaintiff again disputed the inaccurate and derogatory AMEX account reporting on his credit. In those letters, Plaintiff explained that his identity was stolen and the AMEX account was opened as a result of identity theft.

34. In or around January of 2024, Experian responded to Plaintiff's December 2023 dispute. Experian informed Plaintiff that AMEX had verified the disputed information. AMEX continued to report the fraudulent information on Plaintiff's credit file with Experian.

35. Plaintiff did not receive a timely response (or any response) from Trans Union following his December 2023 dispute

36. In May of 2024, Plaintiff mailed a third set of dispute letters to Experian and Trans Union, via USPS first class certified mail, return receipt requested.

37. In his May 2024 dispute letters to Experian and Trans Union, Plaintiff again disputed the inaccurate and derogatory AMEX account reporting on his credit. He again explained that the AMEX account was opened by an identity thief. With both of these letters, Plaintiff included a copy of an Identity Theft Report that he filed with the FTC on May 8, 2024.

38. In or around June of 2024, Experian responded to Plaintiff's May 2024 dispute. Experian informed Plaintiff that AMEX had verified and updated the disputed information. AMEX continued to report the fraudulent information on Plaintiff's credit file.

39. In or around June of 2024, Trans Union responded to Plaintiff's May 2024 dispute. Trans Union informed Plaintiff that AMEX had verified and updated the disputed information. AMEX continued to report the fraudulent information on Plaintiff's credit file.

40. After AMEX failed to conduct the detailed and searching reinvestigation required of it under *Johnson v. MBNA*, 357 F.3d 426 (4th Cir. 2004), Experian, and Trans Union "parroted" the information dictated to them by AMEX.

41. Upon information and belief, Equifax, Experian, and Trans Union prepared and published to third parties multiple, inaccurate consumer reports about Plaintiff that reflected AMEX's reporting of the inaccurate and derogatory account.

### *The CRAs Forwarded Plaintiff's Disputes to AMEX, Who Did Nothing*

42. In each instance in which Plaintiff disputed the AMEX account with the CRAs, the CRAs forwarded Plaintiff's disputes to AMEX using an electronic system called "e-Oscar," which is an industry-wide process by which consumer disputes are electronically communicated to furnishers and dispute results are electronically communicated back to CRAs.

43. On information and belief, e-Oscar is also the system by which AMEX has agreed it will accept consumer disputes from the CRAs.

44. In each instance in which AMEX received one of Plaintiff's disputes from a CRA, AMEX became obligated under the FCRA to investigate that dispute.

45. Plaintiff's disputes to AMEX to attempt to have it investigate his complaints went unanswered.

46. AMEX failed to investigate Plaintiff's complaints.

47. Despite Plaintiff providing AMEX with ample notice that he is a victim of identity theft and he does not owe the debt, AMEX continued (and continues still) to report the fraudulent account as "accurate" to the CRAs. Discovery will show that all AMEX did when supposedly investigating Plaintiff's disputes from the CRAs was consult its own internal account records and simply report back to the CRAs the same inaccurate information Plaintiff was disputing.

48. On dates better known to Equifax and AMEX, Equifax furnished Plaintiff's dispute to AMEX.

49. On dates better known to Experian and AMEX, Experian furnished Plaintiff's disputes to AMEX.

50. On dates better known to Trans Union and AMEX, Trans Union furnished Plaintiff's disputes to AMEX.

51. Upon information and belief, the CRAs timely notified AMEX of Plaintiff's disputes, via e-OSCAR or otherwise, and provided the supporting documents with Plaintiff's disputes.

52. The CRAs responded to Plaintiff's disputes, claiming the reported information was verified as accurate and the information was updated. This response confirms that the CRAs communicated Plaintiff's disputes to AMEX.

53. Plaintiff is certain that the CRAs communicated his disputes to AMEX, because AMEX mailed three letters to Plaintiff regarding his dispute of the account.

54. In the first letter to Plaintiff, dated May 20, 2024, AMEX acknowledged his dispute (and cited insufficient information to "conduct a reasonable review" of Plaintiff's claim).[1]

55. AMEX then mailed a second letter to Plaintiff dated June 10, 2024, stating that "The inquiry is currently under investigation by the U.S. Fraud Department. We will notify you in writing upon completion of the review."

56. AMEX sent a third and final letter to Plaintiff, dated June 23, 2024, in which it told him, "We are writing in response to your dispute regarding the above account issued in your name. We have reviewed our records and are unable to accept your claim since you benefited from the use of this Card."

57. Plaintiff did not use the AMEX card.

58. Plaintiff did not benefit from any use of the AMEX card.

59. By its actions as described herein, AMEX furnished and communicated false credit information regarding Plaintiff.

### *AMEX Repeatedly Obtained and Used Plaintiff's Consumer Report(s) Without a Permissible Purpose*

60. Accessing consumer reports is presumptively illegal. To overcome this presumption, a party seeking to access consumer reports must have a permissible purpose for doing so and must certify to the agency from which it seeks reports the FCRA purpose for which it will use the reports and that it will use the reports for no other purpose. 15 U.S.C. § 1681(f).

61. One such permissible purpose that arises in the credit realm is for reports to issue "[t]o a person which [the reporting agency] has reason to believe—A intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be

---

[1] Despite the mandates in 15 U.S.C. § 1681s-2(b)(1)(E), AMEX admitted here that it could not verify that the account belonged to Plaintiff—and yet AMEX continued (and continues still) to report the fraudulent account on Plaintiff's credit.

furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).

62. Likewise, Courts have long held that reports issued to a user involving an extension of credit or for collection purposes as to credit fall within the coverage of § 1681b(a)(3)(A). *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011) ("the statute expressly permits distribution of a consumer report to an entity that 'intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer.'"); *Korotki v. Thomas, Ronald & Cooper, P.A.*, 131 F.3d 135 (4th Cir. 1997) (Defendant "was seeking to collect an account owed by the consumer, § 1681(b)(3)(A), likewise a permissible purpose"); *Cooper v. Pressler & Pressler, LLP*, 912 F. Supp. 2d 178, 188 (D.N.J. 2012) ("Capital One could rightfully obtain a copy of Plaintiff's consumer report from a CRA in order to review, or collect upon, Plaintiff's MasterCard credit card account.").

63. Apart from 15 U.S.C. § 1681b(a)(3)(A), no other permissible purpose could conceivably allow AMEX to access Plaintiff's consumer reports.

64. AMEX first accessed Plaintiff's credit file in connection with its issuance of the fraudulent credit card account in or around July of 2019. The information AMEX received purportedly authorizing it to access Plaintiff's consumer report(s) bore multiple hallmarks of identity theft. Even a cursory evaluation of the information submitted to AMEX to purportedly authorize it to access Plaintiff's credit report to issue a credit card account would have revealed that the credit card application was fraudulent. Nonetheless, AMEX illegally accessed Plaintiff's consumer report(s) and then issued a fraudulent credit card account based on those consumer report(s).

9

65. But for AMEX's illegal access of Plaintiff's consumer reports, the fraudulent credit card account would not have been issued.

66. AMEX continued to illegally access Plaintiff's consumer report(s) after Plaintiff notified AMEX that the account was opened fraudulently.

67. Although Experian deleted the record of AMEX's access (but not the account itself), a "dispute response" from Experian dated June 10, 2024 revealed that AMEX has accessed Plaintiff's credit at least fifty-seven times since March 15, 2023.

68. AMEX used information from one or more illegally obtained consumer report(s) regarding Plaintiff to further its illegal efforts to issue credit card accounts.

### *Plaintiff Suffered Actual Harm*

69. AMEX continued to report the derogatory account on Plaintiff's credit reports even after being notified that this information is false. Upon information and belief, AMEX is *still* reporting the fraudulent information on Plaintiff's credit file.

70. Plaintiff attempted to resolve this matter with AMEX, yet AMEX chose to ignore its duties under the FCRA. AMEX's failures to correct its reporting contributed significantly to the destruction of Plaintiff's credit through the repeated publication of false and defamatory information.

71. As a result of the inaccurate and derogatory credit reporting, Plaintiff has suffered damages, including, but not limited to:

   a. Harm to Plaintiff's credit opportunities;

   b. Fear of being denied credit and apprehension in applying for new credit;

   c. Monies lost by attempting to fix his credit, e.g., communication costs, postage for disputes;

    d. Loss of time attempting to correct the inaccuracies;

    e. Stress associated with attempting to resolve this matter.

    f. Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life, including but not limited to: severe depression and anxiety, feelings of fear, feelings of shame, embarrassment and humiliation, harm to relationships, difficulty concentrating, harm to job performance (resulting in job loss), harm to reputation, and loss of privacy.

### *Defendant's Conduct was Willful*

72. The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

73. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

74. Just in federal court alone, during the last decade, AMEX has had to defend over 600 consumer credit lawsuits.

75. AMEX is also aware of substantive and detailed criticism by public interest groups about their automated dispute system. For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading legal treatise in this field, also published a scathing research paper detailing the actual process followed by the CRAs and furnishers (like

11

AMEX) when a consumer makes a dispute. That report was updated in 2019. AUTOMATED INJUSTICE REDUX *Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors*, National Consumer Law Center, February 2019. ("NCLC Report").[2]

76. The NCLC Report summarized its context:

> Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian and Trans Union), and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

NCLC Report at 2.

77. AMEX had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

78. AMEX had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016).

79. AMEX had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Johnson v. MBNA,* 357 F.3d 426 (4th Cir. 2004).

80. AMEX had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246

---

[2] *Available at* https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

(4th Cir. 2017).

81. AMEX had notice of and its lawyers or other management employees responsible for FCRA compliance had reviewed *Bach v. First Union Nat. Bank*, 149 F. App'x 354 (6th Cir. 2005).

82. Despite the notice and judicial, regulatory, and public interest criticism, AMEX has refused to change its dispute investigation process because it believes it would cost too much money to do so.

83. AMEX's procedures imposed on Plaintiff an unjustifiable and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(A) & (B)

84. Plaintiff realleges and incorporates all factual allegations set forth in the Complaint.

85. The duties on furnishers were enacted almost thirty years ago, in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

86. Furnishers' independent duties under the FCRA include independently investigating consumer disputes by reviewing all relevant information provided by the CRAs. Further, the furnisher must report the results of this investigation to the CRAs and accurately correct, update, or delete incorrect information previously reported to the CRAs.

87. Defendant AMEX violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully conduct a reasonable investigation of Plaintiff's disputes after his disputes were furnished directly to it by Equifax, Experian, and Trans Union.

88. "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295,

13

1303 (11th Cir. 2016) (citations omitted). As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").
>
> 357 F.3d 426, 430 (4th Cir. 2004).

89. Defendant AMEX violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided when Equifax, Experian, and Trans Union forwarded Plaintiff's disputes to AMEX.

90. As a result of AMEX's conduct, action, and inaction, Plaintiff suffered damage as alleged above, including by example only and without limitation: costs associated with disputing the inaccurate information, loss of credit opportunities, severe depression and anxiety, feelings of fear, feelings of shame, embarrassment and humiliation, harm to relationships, difficulty concentrating, harm to job performance (resulting in job loss), harm to reputation, and loss of privacy.

91. The violations by AMEX were willful, rendering AMEX liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, AMEX was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

92. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from AMEX in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT II
## VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(C) & (D)

93. Plaintiff realleges and incorporates all factual allegations set forth in the Complaint.

94. AMEX has long been aware that a furnisher must fully and accurately report to the CRAs the results of its investigation, including whether or not the consumer disputes such reporting. *Saunders v. Branch Banking and Tr. Co. Of VA*, 526 F.3d 142 (4th Cir. 2008) (Creditor's failure to report disputed nature of debt to all credit reporting agencies (CRAs), after receiving notice of dispute from one CRA, and conducting investigation and verification, was cognizable as violation of Fair Credit Reporting Act's (FCRA) duty to review and update reports for inaccuracies and omissions.)

95. On one or more occasions within the past two years, by example only and without limitation, AMEX violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the false information within Plaintiff's credit files with the CRAs in response to his disputes without also including an accurate notation that the debt was disputed and by failing to correctly report results of an accurate investigation to the CRAs.

96. On information and belief, Plaintiff alleges that AMEX frequently fails to add the correct notation indicating that the account is disputed when it responds to the e-Oscar ACDVs.

97. On information and belief, Plaintiff alleges that, after AMEX responds to an e-Oscar ACDV from one consumer reporting agency, AMEX rarely (if ever) reports the disputed nature of that debt to <u>all</u> consumer reporting agencies reporting that tradeline.

98. Plaintiff's disputes were, at minimum, bona fide.

99. As a result of these violations of 15 U.S.C. § 1681s-2(b)(C) and (D), Plaintiff suffered actual damages including but not limited to: costs associated with disputing the inaccurate

information, loss of credit opportunities, severe depression and anxiety, feelings of fear, feelings of shame, embarrassment and humiliation, harm to relationships, difficulty concentrating, harm to job performance (resulting in job loss), harm to reputation, and loss of privacy.

100. AMEX was aware of the *Saunders v. Branch Banking & Trust* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Plaintiff's disputes.

101. On information and belief, Plaintiff alleges that the procedures followed regarding Plaintiff's FCRA disputes through e-Oscar were the procedures that AMEX intended its employees or agents to follow.

102. On information and belief, Plaintiff alleges that AMEX's employees or agents did not make a mistake in the way they followed AMEX's procedures when they received, processed and responded to the CRAs' ACDVs and did not include a proper notation regarding the account being in dispute.

103. On information and belief, the Plaintiff alleges that AMEX has not materially changed its FCRA investigation procedures regarding the notation of a dispute in ACDVs after learning of its failures in this case.

104. The violations by AMEX were willful, rendering AMEX liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, AMEX was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

105. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from AMEX in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT III
## VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681s-2(b)(E)

106. Plaintiff realleges and incorporates all factual allegations set forth in the Complaint.

107. Defendant AMEX violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete information from Plaintiff's file after receiving Plaintiff's disputes from the CRAs and prior to the commencement of this action. This failure to correct Plaintiff's information resulted from AMEX's failure to investigate as articulated in this Complaint, after AMEX received notice of Plaintiff's disputes from the CRAs.

108. As a result of this conduct (the action and inaction of AMEX), Plaintiff suffered actual damages, including but not limited to: costs associated with disputing the inaccurate information, loss of credit opportunities, severe depression and anxiety, feelings of fear, feelings of shame, embarrassment and humiliation, harm to relationships, difficulty concentrating, harm to job performance (resulting in job loss), harm to reputation, and loss of privacy.

109. The violations by AMEX were willful, rendering AMEX liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, AMEX was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

110. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from AMEX in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT IV
## VIOLATIONS OF FAIR CREDIT REPORTING ACT 15 U.S.C. § 1681b(f)

111. Plaintiff realleges and incorporates all factual allegations in the Complaint as it fully set out herein.

112. AMEX repeatedly violated 15 U.S.C. § 1681b(f) by unlawfully obtaining Plaintiff's consumer reports without Plaintiff's written authorization or a permissible purpose.

113. AMEX continued accessing Plaintiff's consumer reports even after Plaintiff gave AMEX notice that Plaintiff is a victim of identity theft.

114. AMEX also violated 15 U.S.C. § 1681b(f) by failing to accurately and lawfully certify a permissible purpose when accessing Plaintiff's consumer report(s).

115. Plaintiff's consumer report(s) contained a wealth of private information which AMEX had no right to access absent a specific Congressional license to do so.

116. Due to AMEX's conduct, action, and inaction, Plaintiff suffered actual damages, including but not limited to invasion of his statutory right to confidentiality of his personal information, loss of privacy, loss of credit opportunities, harm to reputation, humiliation and embarrassment, and mental and emotion distress.

117. The violations by AMEX were willful, rendering AMEX liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, AMEX was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o. Plaintiff does not seek joint liability.

118. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from AMEX in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## DEMAND FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1) Award Plaintiff actual and punitive damages for violations of the FCRA by AMEX;

(2) Award Plaintiff attorney's fees and costs under the FCRA;

(3) Award Plaintiff pre-judgment and post-judgment interest at the legal rate; and

(4) Award other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**.

          MICHAEL LANE

          By:

          /s/ Craig C. Marchiando
          Craig C. Marchiando, NY Bar No: 1024495
          CONSUMER LITIGATION ASSOCIATES, P.C.
          763 J. Clyde Morris Blvd., Suite 1-A
          Newport News, VA 23601
          (757) 930-3660 - Telephone
          (757) 930-3662 – Fax
          Email: craig@clalegal.com

          *Counsel for Plaintiff*